UNITED STATES of America
v.
Herman Frederick Wolfgang BECKER.
Cr. No. 12275.

United States District Court
E. D. Virginia,
Norfolk Division.
March 27, 1962.

468

C. V. Spratley, Jr., U. S. Atty., for plaintiff.

Frederick T. Stant, Jr., Norfolk, Va., for defendant.

WALTER E. HOFFMAN, Chief Judge.

The defendant, an admitted gambler, stands indicted for perjury under three counts wherein it is alleged that defendant did, on or about May 3, 1961, after being placed under oath before a grand jury, unlawfully, knowingly and wilfully, contrary to said oath, state material matter which defendant did not believe to be true.

The indictment charges that the grand jury was conducting an investigation to determine whether there were violations, within the Eastern District of Virginia, of the Internal Revenue laws, Title 26, §§ 4401, 4404, 4411, 4412, 4421, 7201 and 7203. It further charges that it was material to said investigation to determine (1) whether certain persons were in the business of receiving wagers without having registered with the District Director of Internal Revenue, and whether defendant knew of such persons, (2) whether there were pick-up men, messengers and/or runners employed by persons engaged in the business of receiving wagers, (3) whether such pick-up men, messengers and/or runners had derived any taxable income for the performance of such services, and (4) whether the defendant employed and paid salaries or other compensation to such persons.

The first count charges that the defendant falsely swore to the following:

"Q. Does Irene Burnette now or in the past, specifically during the calendar year 1960, work for you as a messenger, pick-up woman or clerk or runner?

"A. Let me go outside.

(Witness leaves room)

(Witness returns to room)

"The answer is 'no'."

The second count charges that the defendant falsely swore to the following:

"Q. Mr. Becker, that there won't be any confusion, I will ask you the question again. Did you have any runners pick-up men or women, or messengers working for you in your wagering business in 1960 and 1961?

"A. Did I answer that question before?

"Q. No. You answer it now.

"A. Did I have any runners or pick-up men or messengers working for me in 1960 and 1961. You asked me that before, didn't you?

"Q. I am asking you now.

"A. What was my answer then?

"Q. I am asking you what your answer is now?

"A. The answer is 'no'.

"Q. You had no runners, messengers or pick-up men working for you in 1960 and 1961?

"A. Right."

The third count charges that the defendant falsely swore to the following:

"Q. When you are very busy, does anyone help you, going around picking up these bets?

"A. Nobody picks up bets for me.

"Q. How about numbers bets?

"A. I don't have numbers to amount to anything. I don't have pick-up men.

"Q. When you had pick-up men, who picked them up?

"A. I don't have no pick-up men.

"Q. When you had pick-up men, who picked them up?

"A. I think I answered. I didn't have pickup men before.

"Q. You used to have pick-up men, you answered you had pick-up men until you denied you had pick-up men.

"A. My answer was, 'I had no pick-up men'.

"Q. Did you ever have pick-up men, Mr. Becker?

"A. You are talking about 1960 and 1961, right?

"Q. Yes.

"A. Let me go out.
(witness leaves room)
(witness returns to room)

"A. You say did I have pick-up men at any time. In 1960 or 1961 I had no pick-up men."

The main force of defendant's motion to dismiss the indictment lies in the contention that the questions were not material to the inquiry and that such essential element is absent from the face of the indictment.

The various references to the Internal Revenue laws may be summarized: § 4401 provides (1) that there shall be a 10% excise tax on all wagers defined in § 4421, (2) what charges shall be included in determining the amount of wagers so taxed, (3) each person "engaged in the business of accepting wagers" is liable for the tax on all wagers placed with him, and (4) any person required to register under § 4412 the name and place of residence of such other person shall be liable for and shall pay the tax under this subchapter on all such wagers received by him; § 4404 provides that the 10% tax shall apply only to wagers placed or accepted in the United States; § 4411 provides for the imposition of a special tax of $50.00 per annum on every person required to pay the 10% tax under § 4401; § 4412 states that all persons required to pay the $50.00 special tax under § 4411 shall register their names, residences and places of business, and the same information as to persons receiving wagers for them, and a person receiving wagers for another shall register the same information as to himself and the person or persons for whom he receives wagers; § 4421 defines the terms "wagers" and "lottery"; § 7201 relates to the wilful attempt in any manner to evade or defeat any tax or the payment thereof; § 7203 refers to the requirement of paying an estimated tax, making a return, keeping records, or supplying information.

■ It is urged that defendant is protected in relying upon the advice of counsel. Where, as here, wilfulness is an element of the offense charged, good faith may be shown and the jury may consider that defendant sought and followed the advice of counsel. Williamson v. United States, 207 U.S. 425, 453, 28 S.Ct. 163, 52 L.Ed. 278; Shushan v. United States, 5 Cir., 117 F.2d 110, 118. The defense of advice of counsel is, at best, evidence which the jury may consider under appropriate instructions.

■ Defendant argues that since he had paid the special $50.00 tax and had otherwise complied with the federal wa-

gering tax laws, questions directed to defendant's activities are immaterial as a matter of law. Such a test is untenable. As was said in Carroll v. United States, 2 Cir., 16 F.2d 951, 953:

"Its [the grand jury] investigation proceeds step by step. A false statement by a witness in any of the steps, though not relevant in an essential sense to the ultimate issues pending before the grand jury, may be material, in that it tends to influence or impede the course of the investigation."

To the same effect is United States v. Siegel, S.D.N.Y., 152 F.Supp. 370, 377, wherein the court states:

"An essential element of the crime of perjury under 18 U.S.C. § 1621 is that the false testimony be as to a 'material matter'. A general allegation of materiality such as is made in this indictment will suffice unless the other allegations in the indictment clearly show that the false statements could not have been material. Markham v. United States, 160 U.S. 319, 16 S.Ct. 288, 40 L.Ed. 441; United States v. Hirsch, supra [2 Cir., 136 F.2d 976]; Woolley v. United States, 9 Cir., 97 F.2d 258. Defendant must then stand trial though, of course, in order to obtain a conviction the government must prove at the trial that the false statements were with respect to material matter. United States v. Lattimore, 94 U.S.App.D.C. 268, 215 F.2d 847."

■ Under the decision of United States v. Calamaro, 354 U.S. 351, 77 S.Ct. 1138, 1 L.Ed.2d 1394, it seems clear that a mere pick-up man or runner is not required to pay the occupational tax of $50.00 under § 4411; nor can he be required to register under § 4412. Despite this fact, the materiality as to whether the Burnette woman or others were working for the defendant as runners, etc., is merely a relevant chain of inquiry in determining possible violations of § 7201, particularly since defendant apparently

maintained no records and was, before the grand jury, most evasive about the volume of his business. Moreover, it is an elementary route for a grand jury to follow, in investigating possible federal wagering violations, to determine the identity of people in such business. A runner for defendant may have knowledge of other gamblers who should be required to pay the occupational tax, register, etc. It certainly cannot be categorically stated that false answers to the questions here propounded would not possibly "tend to impede the course of the investigation."

Defendant relies upon United States v. Cross, D.C., 170 F.Supp. 303, to support his argument that the true purpose of the grand jury investigation was to entrap defendant into perjury. In Cross defendant testified before a congressional committee and was later recalled. His initial testimony, read alone, was ambiguous. He was recalled solely for the purpose of obtaining his positive denial to certain facts as stated by another witness. In directing an acquittal, the court limited the effect of its ruling by saying:

"The ruling in this case is not to be interpreted as holding that a witness may never be recalled before a committee for additional testimony on a point already testified to, or that he may not be questioned about a prior denial, or that a committee may never address questions to a witness which are not clearly in aid of legislation. This court merely holds that a perjury indictment may not be found on false testimony in response to questions which are not asked for the purpose of eliciting facts material to the committee's investigation, that is, facts sought in aid of the legislative purposes."

There is nothing in Brown v. United States, 8 Cir., 245 F.2d 549, which unduly restricts the investigative powers of a grand jury. In order for the answers of a witness to be relevant or material, it follows that the questions should have some connection with possible offenses committed within the jurisdiction of the

grand jury. Thus, a Nebraska grand jury propounding questions relating to possible offenses committed in Missouri is without power to prosecute for perjury upon the receipt of false answers by reason of the lack of relevancy.

The general rules of law dealing with the investigative powers of a grand jury are sufficiently set forth in Sullivan v. United States, 348 U.S. 170, 75 S.Ct. 182, 99 L.Ed. 210; Blair v. United States, 250 U.S. 273, 282, 39 S.Ct. 468, 63 L.Ed. 979; Frisbie v. United States, 157 U.S. 160, 15 S.Ct. 586, 39 L.Ed. 657; and Weinheimer v. United States, 109 U.S.App.D.C. 24, 283 F.2d 510, cert. den. 364 U.S. 932, 81 S.Ct. 381, 5 L.Ed.2d 366.

The defendant's motion to dismiss the indictment is denied.